ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeals of -- | ) | |
| | ) | |
| CCIE & Co. | ) | ASBCA Nos. 58355, 59008 |
| | ) | |
| Under Contract No. W91GFC-08-M-S012 | ) | |

APPEARANCE FOR THE APPELLANT:        Mr. Alie Sufan
                                      Owner

APPEARANCES FOR THE GOVERNMENT:       Raymond M. Saunders, Esq.
                                       Army Chief Trial Attorney
                                      CPT Vera A. Strebel, JA
                                      Erica S. Beardsley, Esq.
                                       Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE MELNICK
ON THE GOVERNMENT'S MOTIONS TO DISMISS FOR LACK OF JURISDICTION

In these appeals, CCIE & Co. (CCIE) seeks payment of $3,000 for five months of refrigerator maintenance services. The government moves to dismiss the appeals for lack of jurisdiction.

STATEMENT OF FACTS (SOF) FOR THE PURPOSES OF THE MOTIONS

1. On 28 June 2008, CCIE and the Joint Contracting Command – Iraq entered into Contract No. W91GFC-08-M-S012. Under the contract, CCIE was required to deliver one refrigeration container to the governance center at Saab Al Bor, Iraq and a second refrigeration container to COP (Combat Outpost) Bassam, Iraq, at a price of $20,000 each. CCIE was also required to provide maintenance of the refrigeration containers for 12 months at a price of $600 per month. The total value of the contract was $47,200. (R4, tab 1)

2. The contract incorporated by reference Federal Acquisition Regulation (FAR) 52.212-4, CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS (FEB 2007) (R4, tab 1 at 1 of 15). Subparagraph (i)(1) of FAR 52.212-4 provided that payment would be made for items accepted by the government. Paragraph (d) of FAR 52.212-4 stated that the contract was subject to the Contract Disputes Act of 1978 (CDA), as amended.

3. Under the contract's invoicing procedures, CCIE was to prepare and submit invoices to the contracting officer (CO) for work performed. The CO's representative was then responsible for preparing and submitting a DD Form 250, Material Inspection

and Receiving Report, to the contracting office. The contract required the government to pay an invoice within 30 days after receipt of the invoice and DD Form 250. (R4, tab 1 at 4-5 of 15, 15 of 15)

4. The record shows that CCIE delivered both required refrigeration containers, which the government accepted on 19 July 2008. A payment voucher indicates that the government paid CCIE $40,000 for the two refrigeration containers on 25 August 2008. (R4, tab 5 at 1, 3)

5. The Rule 4 file contains the DD Form 250s, invoices, and payment vouchers for the monthly maintenance periods from 16 July 2008 through 14 December 2008 (R4, tabs 6-9). The Rule 4 file also includes a DD Form 250 and an invoice for the monthly maintenance period from 15 December 2008 through 14 January 2009 (R4, tab 10), although no payment voucher for this period is in the record.

6. The Rule 4 file includes a document titled "ODS Document History," dated 8 January 2013, which indicates that the government disbursed $43,600 under the contract ($3,600 less than the award amount). The document suggests that the government made its last payment on or about 12 May 2009. Attached to the ODS Document History is an undated spreadsheet listing the invoices submitted under the contract, and the amount invoiced. The spreadsheet also lists payment voucher numbers corresponding to the $40,000 payment for the two refrigeration containers and for the monthly maintenance service periods from 16 July 2008 through 14 January 2009, indicating that the government paid CCIE for the delivery of the refrigeration containers and the six monthly maintenance service periods ending 14 January 2009. The spreadsheet also indicates that CCIE sought payment for the five monthly maintenance service periods from 15 January 2009 through 14 March 2009 and 15 April 2009 through 27 June 2009[1] via a single invoice, Invoice No. 1116.[2] The spreadsheet, however, does not contain a payment voucher number that corresponds to this invoice. The spreadsheet also includes a note with regard to the period from 15 June through 27 June 2009 that states, "[T]his is not a complete month. For the number of days it would be $240." (R4, tab 11)

7. By email dated 13 October 2012, appellant contacted the Board stating that it had a claim regarding "[r]efrigerator service." Treating appellant's email as a notice of appeal, the Board docketed the appeal as ASBCA No. 58355.

8. Along with its 13 October 2012 notice of appeal, CCIE submitted a copy of Invoice No. 2005CCIE-N01116 dated 1 July 2009. The invoice sought $3,000 for five

---

[1] The 27 June 2009 date is listed in the spreadsheet as "6/2/-7/09," which we consider to be a typographical error.

[2] We conclude that this is a reference to Invoice No. 2005CCIE-N01116 (see SOF ¶ 8).

monthly maintenance periods, from 15 January 2009 through 14 March 2009 and from 15 April 2009 through 27 June 2009. The invoice also sought $100,000 as a "Claim due to the delay and ignoring Our mails and request for our payment." The $103,000 invoice did not contain a certification in accordance with the CDA, 41 U.S.C. § 7103(b).

9. CCIE also submitted copies of September 2009 email correspondences between CCIE and government officials with its 13 October 2012 notice of appeal. In a 2 September 2009 email to appellant, the CO stated that he had recently taken over the contract. The CO noted that appellant had complained of "having payment issues" on the contract and asked appellant to provide copies of all invoices and DD Form 250s for the contract, stating, "I will see what I can do to have them processed promptly." In a 13 September 2009 email to the CO, appellant stated that he had resubmitted the invoices on 2 September. Appellant further stated that he had been told that a government official had prepared the DD Form 250 and had provided it to the previous CO. Appellant asserted its right to payments, claiming it was "suppose to have our payments since eight months." By email to various government officials dated 21 September 2009, appellant stated that he had sent many emails to the CO regarding payment but had received no reply. In a 27 September 2009 email to the CO, appellant reasserted its entitlement to payment, inquiring again as to when it would be paid.

10. By email dated 8 January 2013, a contract specialist at the Rock Island Contracting Center, Reachback Division, contacted CCIE stating that the government was in the process of closing out the contract and requested confirmation that there were "no outstanding claims, disputes or other contractual issues" (R4, tab 12). Appellant responded by email dated 9 January 2013 stating that it still had an outstanding invoice since 2009. Appellant further stated that it had "sent many mails and wait[ed] for my payments," but no one replied to its inquiries. Appellant attached a copy of Invoice No. 2005CCIE-N01116, seeking payment of $103,000, and an electronic funds transfer form to its response. (R4, tab 13) Although not in the government's Rule 4 file,[3] appellant also attached to its response copies of the September 2009 email correspondences it had submitted with its 13 October 2012 notice of appeal (ASBCA No. 58355, compl., attachs.).

11. The government moved to dismiss ASBCA No. 58355 for lack of jurisdiction, arguing that appellant had failed to submit a proper claim.

---

[3] Appellant copied the Board on its 9 January 2013 email response, which the Board acknowledged as appellant's complaint in ASBCA No. 58355.

3

12. Appellant responded to the government's motion by letter dated 20 April 2013, stating:

> I sent my invoices on monthly basis for my payments. Until the last invoice No2005CCIE-N01116 I sent several mails to [various government officials] asking for the situation for my payment,
>
> ....
>
> Since 2009, I kept sending mails for almost one year but no reply and nothing happened....
>
> ....
>
> I still insist on my statement for my claim for the amount $103,000 (**$3000 for my Balance payment [and] $100,000 I claim for the delay**)due to damages with delay for several years.

(58355, app. resp.)

13. In a 24 May 2013 email to government counsel, with a copy to the Board, appellant submitted a second letter dated 20 April 2013 in which it stated:

> I felt I was unfair with my claim. As you know and it is very clear I have outstanding Balance for the refrigerator service amount $3000 where I claimed for this amount since 2008. If you don't wish to consider my claim but at least I can accept to get paid my balance due Since five years.
> I appreciate your reply concerning my outstanding balance $3000.00[.]

We conclude that by this letter appellant has withdrawn the $100,000 "Claim due to the delay and ignoring Our mails and request for our payment" (*see* SOF ¶ 8) from ASBCA No. 58355.

14. In a 10 July 2013 Order, the Board noted that the issues raised in the government's motion to dismiss ASBCA No. 58355 might be resolved, without a decision on the motion, if appellant were to submit a claim to the CO meeting the requirements of the CDA and file a new appeal should the claim be denied or deemed denied by the government. The Board therefore directed appellant to indicate whether it would attempt to submit a claim to the CO.

15. By email dated 13 July 2013, and in apparent response to the Board's Order, appellant submitted multiple documents to government counsel and the Board including a revised copy of Invoice No. 2005CCIE-N01116. The revised invoice omitted the $100,000 demand, was signed by appellant's representative, and included the following statement: "The Claim is made in good faith; the Supporting Data are accurate and complete." The revised invoice, however, remained dated 1 July 2009.

16. By reply dated 29 August 2013, the government asserted that appellant's 13 July 2013 response was not a valid claim and renewed its motion to dismiss for lack of jurisdiction (58355, gov't reply).

17. In a 9 October 2013 Order, the Board directed appellant, to the extent it considered its 13 July 2013 submission to be a claim, to notify the Board whether it intended to file a new appeal based upon the submission.

18. In response, appellant submitted a letter dated 15 October 2013. The letter repeated much of appellant's 20 April 2013 response to the government's motion to dismiss ASBCA No. 58355 (*see* SOF ¶ 12), but only "insist[ed] on my statement for my claim for the amount **$3,000**" (ASBCA No. 59008, notice of appeal). The Board determined that the letter was a notice of appeal, and docketed the matter as ASBCA No. 59008.

19. The government moved to dismiss ASBCA No. 59008 for lack of jurisdiction, arguing that appellant's 15 October 2013 letter was not a valid claim (59008, gov't mot.). Appellant did not respond to the government's motion despite two opportunities to do so.

## DECISION

Appellant, as the proponent of the Board's jurisdiction, bears the burden of establishing jurisdiction by a preponderance of the evidence. *Hanley Indus., Inc.*, ASBCA No. 58198, 14-1 BCA ¶ 35,500 at 174,015. The facts supporting jurisdiction are subject to our fact-finding upon a review of the record. *Raytheon Missile Sys.*, ASBCA No. 58011, 13 BCA ¶ 35,241 at 173,016; *Green Dream Grp.*, ASBCA No. 57413 *et al.*, 12-2 BCA ¶ 35,145 at 172,520.

The Board's jurisdiction under the CDA is dependent upon the contractor's submission of its claim to the CO and a final decision on, or the deemed denial of, the claim. 41 U.S.C. §§ 7103-7105; *Parsons Global Servs., Inc.*, ASBCA No. 56731, 11-1 BCA ¶ 34,632 at 170,653, *aff'd sub nom. Parsons Global Servs., Inc. ex rel. Odell Int'l, Inc. v. McHugh*, 677 F.3d 1166 (Fed. Cir. 2012). Because the CDA does not define the term "claim," we look to the definition in the FAR. *See, e.g., Taj Al Safa Co.*, ASBCA

5

No. 58349, 13 BCA ¶ 35,278 at 173,156. The FAR defines a "*Claim*" as follows:

> *Claim* means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.... A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim. The submission may be converted to a claim, by written notice to the contracting officer as provided in 33.206(a), if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

FAR 2.101. We determine whether a contractor's communication is a CDA claim on a case-by-case basis and apply a common sense analysis. *Todd Pac. Shipyards Corp.*, ASBCA No. 55126, 06-2 BCA ¶ 33,421 at 165,687. In determining whether a claim has been submitted, we may examine the totality of the correspondence between the parties. *Vibration and Sound Solutions Ltd.*, ASBCA No. 56240, 09-2 BCA ¶ 34,257 at 169,270.

Additionally, the CDA requires contractor claims in excess of $100,000 to be certified. 41 U.S.C. § 7103(b). It is well settled that certification, when applicable, is a jurisdictional prerequisite for this Board. *Special Operative Grp., LLC*, ASBCA No. 57678, 11-2 BCA ¶ 34,860 at 171,480. Although a defective certification does not deprive the Board of jurisdiction, the complete absence of one where required does and dictates dismissal. *Dev. & Evolution Constr. Co.*, ASBCA No. 58342, 13 BCA ¶ 35,453 at 173,859.

ASBCA No. 58355

With its first notice of appeal, appellant submitted a copy of an invoice seeking $103,000 for five months of refrigerator maintenance and delay in payment (SOF ¶ 8). In its motion to dismiss ASBCA No. 58355, the government asserts that "there is no record that appellant ever submitted a claim prior to filing a notice of appeal or complaint with the Board" (58355, gov't mot. at 2). The government argues that appellant's invoice was merely a routine request for payment and not a proper CDA claim (*id.* at 3). The government further argues that the Board lacks jurisdiction because the invoice sought more than $100,000 but was not certified (*id.*).

The government's apparent position is that ASBCA No. 58355 involves only a single request in the amount of $103,000. We view appellant's invoice as presenting two separate demands, one for $3,000 for payment allegedly due under the contract and a separate demand for $100,000 for damages caused by delays communicating with appellant and processing its payment request. Whether appellant is owed money for

6

work allegedly performed under the contract involves a different set of operative facts than whether appellant may recover for an alleged delay communicating with it. Accordingly, we examine whether we have jurisdiction over each demand separately. *See Gov't Bus. Servs. Grp., LLC*, ASBCA No. 53920, 03-1 BCA ¶ 32,202 at 159,171 ("To the extent that the dispute pertains to such discrete, independent 'operative facts,' it will be treated as a separate claim…").

Appellant's invoice, dated 1 July 2009, seeks $3,000 for monthly refrigerator maintenance services for the periods from 15 January 2009 through 14 March 2009 and from 15 April 2009 through 27 June 2009 (SOF ¶ 8). Initially, appellant's invoice was a routine request for payment, not a claim. *See Moshman Assocs., Inc.*, ASBCA No. 52320, 00-1 BCA ¶ 30,906 at 152,488; *see also Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1576 n.6 (Fed. Cir. 1995) (en banc) ("The distinction excluding routine requests for payment from the definition of 'claim' relieves COs from the requirement of issuing a CDA final decision on each and every voucher that the government is obligated to pay under the express terms of the contract during its ordinary progression…"). Such a routine request for payment may be converted into a claim, however, by written notice to the CO if it is disputed or not acted upon within a reasonable time. FAR 2.101.

In a 2 September 2009 email, the CO acknowledged that appellant had contacted the government regarding payment issues on the contract (SOF ¶ 9). As of that date, a government document indicates that appellant had been paid for the monthly refrigeration maintenance periods through 14 January 2009 (SOF ¶ 6), and only the amount sought in the 1 July 2009 invoice remained pending. At the CO's request, appellant resubmitted its invoices (SOF ¶ 9). Appellant subsequently contacted the CO regarding the payment of its invoice on 13 September 2009, and 27 September 2009 (SOF ¶ 9). Through these repeated queries seeking payment after the government's continued failure to pay its invoice, CCIE converted its routine request for payment into a claim. *See JWA Emadel Enters., Inc.*, ASBCA No. 51016, 98-2 BCA ¶ 29,960 at 148,240, *aff'g on recon.* 98-2 BCA ¶ 29,765; *Westinghouse Elec. Corp.*, ASBCA No. 25787, 85-1 BCA ¶ 17,910 at 89,691, *aff'd sub nom. Westinghouse Elec. Corp. v. United States*, 782 F.2d 1017 (Fed. Cir. 1986). Because the claim is less than $100,000, it did not need to be certified. *Dev. & Evolution Constr.*, 13 BCA ¶ 35,453 at 173,859 (certification "not necessary for claims of $100,000 or less").

The government suggests that appellant failed to convert its invoice into a valid claim because it did not submit the DD Form 250s with it. The government cites no authority requiring an invoice to be accompanied by a Material Inspection and Receiving Report before it can be converted into a claim. Written notice to the CO is all that is required to convert an invoice into a claim after it becomes disputed or is not timely acted upon. FAR 2.101. The only authority cited by the government, *Northeastern Communication Concepts, Inc.*, ASBCA No. 39053, 91-2 BCA ¶ 24,042, is inapplicable.

7

It merely holds that, when converted to a claim, a termination for convenience settlement proposal requires an explanation of the basis for the requested amount.

We need not decide whether appellant ever submitted a claim to the CO regarding its $100,000 demand for damages due to delays in communicating and processing payment. Appellant has withdrawn this portion of its appeal (SOF ¶ 13), and we dismiss it.

ASBCA No. 59008

The government seeks to dismiss ASBCA No. 59008 for lack of jurisdiction, arguing that appellant's 15 October 2013 submission is not a claim because it was not submitted to the CO (59008, gov't mot. at 3-4).

We need not decide whether appellant's submissions to the Board and government counsel during the course of litigation could constitute proper claims under the CDA. Assuming that they can, any such claim would seek the same relief on the same basis as the $3,000 claim over which we retain jurisdiction in ASBCA No. 58355. Accordingly, we dismiss ASBCA No. 59008 as duplicative of ASBCA No. 58355. *DayDanyon Corp.*, ASBCA No. 57611 *et al.*, 14-1 BCA ¶ 35,507 at 174,038; *Thompson Aerospace, Inc.*, ASBCA Nos. 51548, 51904, 99-1 BCA ¶ 30,232 at 149,570. The government's motion is therefore denied as moot.

## CONCLUSION

Appellant properly converted its $3,000 routine request for payment into a CDA claim over which the Board retains jurisdiction in ASBCA No. 58355. Appellant has withdrawn its $100,000 request due to delay communicating and processing payment from ASBCA No. 58355, and the request is dismissed accordingly. ASBCA No. 59008 is dismissed as duplicative. The government's motions to dismiss for lack of jurisdiction are denied.

Dated: 12 August 2014

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

8

I concur                                    I concur


MARK N. STEMPLER                            MICHAEL T. PAUL
Administrative Judge                        Administrative Judge
Acting Chairman                             Acting Vice Chairman
Armed Services Board                        Armed Services Board
of Contract Appeals                         of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the
Armed Services Board of Contract Appeals in ASBCA Nos. 58355, 59008, Appeals of
CCIE & Co., rendered in conformance with the Board's Charter.

Dated:


JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

9